**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**SANDEEP DUA,**

       **Plaintiff,**

v.                                                Case No: 6:24-cv-911-PGB-UAM

**SOUTHERN HOBBY
DISTRIBUTION, LLC, BKX
HOLDINGS, LLC, BECKETT
COLLECTIBLES, LLC, and
GLOBAL GROWTH HOLDINGS,
LLC,**

       **Defendants.**
_____/

**ORDER**

This cause comes before the Court upon the following filings:

1. Defendant Global Growth Holdings, LLC's ("**Defendant GGH**") Motion to Dismiss Counts VI and VII of Plaintiff's Second Amended Complaint (Doc. 52 (the "**GGH Motion**")) and Plaintiff Sandeep Dua's ("**Plaintiff**") response thereto (Doc. 61); and

2. Defendants Beckett Collectibles, LLC; Southern Hobby Distribution, LLC; and BKX Holdings, LLC's (collectively, the "**Beckett Defendants**") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 54 (the "**Beckett Defendants' Motion**")) and Plaintiff's response thereto (Doc. 62).

Upon consideration, the GGH Motion is due to be granted, and the Beckett Defendants' Motion is due to be denied.

I.  **BACKGROUND**[1]

This lawsuit arises from Plaintiff's employment and termination payout with Defendant GGH and the Beckett Defendants. (*See generally* Doc. 51 (the "**Second Amended Complaint**" or "**SAC**")).

The relation between Defendant GGH and the Beckett Defendants stems from a common nucleus, Greg E. Lindberg ("**Mr. Lindberg**"). (*Id.* ¶¶ 20–21). Mr. Lindberg is a businessman who has "built a private equity empire that has generated billions of dollars in annual revenue." (*Id.*). Mr. Lindberg's private equity empire embodies a "complicated structure which includes various entities, holding companies, and [a] trust." (*Id.* ¶ 21). Within this complicated structure is Defendant GGH, the parent company of all entities owned by Mr. Lindberg. (*Id.* ¶ 24). These entities include Defendant Beckett Collectibles, LLC ("**Defendant Beckett Collectibles**"), Defendant Southern Hobby Distribution, LLC ("**Defendant Southern Hobby**"), and Defendant BKX Holdings, LLC ("**Defendant BKX Holdings**"). (*Id.* ¶¶ 4–16). One way or another, Defendant GGH and the Beckett Defendants are "collectively co-owned and interchangeably operated." (*Id.*).

---

[1] This account of the facts comes from Plaintiff's Second Amended Complaint. (Doc. 51). The Court accepts well-pled factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Plaintiff began his employment in 2009 with Eli Research India Private, Ltd., which, at the time, was a subsidiary of what is now Defendant GGH. (*Id.* ¶ 28). In his role, Plaintiff was responsible for projects assigned to Beckett Media, LP ("**Beckett Media**"), which later became Defendant Beckett Collectibles, as well as projects assigned to other companies owned by Mr. Lindberg. (*Id.* ¶¶ 30, 40–41). Plaintiff was successful in this role as Mr. Lindberg ultimately promoted Plaintiff to CEO/President of Beckett Media in 2012. (*Id.* ¶ 33).

In 2014, Plaintiff was offered stock appreciation rights agreements ("**SARs**") to incentivize his performance with Becket Media, its affiliates, and other companies. (*Id.* ¶ 38). Plaintiff entered into SARs with Defendant GGH and Defendant Beckett Collectibles. (*Id.* ¶ 42; Doc. 51-1). Then, from 2014 to 2018, Plaintiff successfully led Defendant Beckett Collectibles and its affiliates (the "**Beckett Group**") in a series of global acquisitions, expansions, and portfolio management. (Doc. 51, ¶¶ 36–54).

However, in 2018, Mr. Lindberg faced legal issues related to his insurance business portfolio. (*Id.* ¶ 55). Such legal issues escalated, and ultimately, in 2020, Mr. Lindberg was "convicted of bribery concerning programs receiving federal funds and conspiracy to commit 'honest services wire fraud.'" (*Id.* ¶ 60). Considering Mr. Lindberg was imprisoned in 2020, he hired Justin Holbrook ("**Mr. Holbrook**") to lead Defendant GGH. (*Id.* ¶ 61).

Despite this bump in the road, Plaintiff continued along his path of success through his acquisition of Defendant Southern Hobby and securement of funding

3

for Defendant GGH's future acquisitions. (*Id.* ¶¶ 62–68). Moreover, Plaintiff's portfolio management shows that Plaintiff more than doubled the value of the Beckett Group entities up until 2021. (*Id.* ¶¶ 70–71).

Nonetheless, by the end of 2021, Plaintiff decided that he wanted to voluntarily terminate his employment because he "was not in agreement with the future direction" of Defendant GGH and the Beckett Defendants. (*Id.* ¶ 82). Thus, Plaintiff negotiated the termination letter (Doc. 51-2 (the "**Termination Agreement**")) with Mr. Holbrook, who was the CEO of Defendant GGH and interim CEO of Defendant Beckett Collectibles at the time. (Doc. 51, ¶¶ 83, 86).

Plaintiff and Defendant GGH (referred to in the Termination Agreement as the "**Company**") executed the Termination Agreement on March 23, 2022. (Doc. 51-2). Pursuant to the Termination Agreement, Defendant GGH agreed to pay Plaintiff, in monthly installments, $3,291,377.52 for his accrued bonus and $12,266,261.86 for his SARs payout. (*Id.*; Doc. 51, ¶¶ 90–91). The Termination Agreement provided that such payments would be "funded by the Company from the Company's affiliates BKX Holdings, LLC, AT Denmark Investments ApS, and Southern Hobby Distribution, LLC, and such entities['] respective affiliates (collectively, the '**Operating Group**')." (Doc. 51-2, p. 3). In exchange, Plaintiff signed a release of the SARs in a provision stating, "all SARs agreements by and between you and the Company, and between you and any affiliates of the Company, are hereby terminated and extinguished in full subject to fulfillment of payment

4

obligations by the Company as per this letter." (*Id.*). Plaintiff also signed a confidentiality and non-compete agreement. (Docs. 51-2, 51-5).

Thus, throughout 2022 and 2023, Defendant GGH's affiliates, including Defendant Beckett Collectibles and Defendant Southern Hobby, made direct payments to Plaintiff, totaling to $6,731,599.82. (Doc. 51, ¶ 104; Doc. 51-3). However, a shortfall balance arose, and Plaintiff contacted Defendant GGH's director of finance, Marc Greenspan ("**Mr. Greenspan**"), requesting an explanation. (Doc. 51, ¶ 106; Doc. 51-4). After several e-mail exchanges, Mr. Greenspan ultimately informed Plaintiff on May 19, 2023, that the payments owed to Plaintiff under the Termination Agreement could no longer be fulfilled. (Doc. 51, ¶ 110).

As a result, Plaintiff initiated this lawsuit on May 15, 2024. (Doc. 1). Pursuant to the Second Amended Complaint, Plaintiff alleges the following causes of action: breach of contract as to Defendant GGH (Count I); anticipatory repudiation as to Defendant GGH (Count II); breach of contract implied in fact as to the Beckett Defendants (Count III); anticipatory repudiation of contract implied in fact as to the Beckett Defendants (Count IV); in the alternative, tortious interference with a contract as to the Beckett Defendants (Count V); in the alternative, unjust enrichment as to Defendant GGH and the Beckett Defendants (Count VI); and in the alternative, quantum meruit as to Defendant GGH and the Beckett Defendants (Count VII). (Doc. 51, ¶¶ 118–77).

Defendant GGH moves to dismiss Counts VI and VII for failure to state a claim. (*See* Doc. 52). The Beckett Defendants move to dismiss Counts III through VII for failure to state a claim. (*See* Doc. 54). Plaintiff responded in opposition. (Docs. 61, 62). The matter is thus ripe for review.

## II.    STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Furthermore, in ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint" and the attachments thereto which are undisputed and central to the claim. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Austin v. Mod. Woodman of Am.*,

6

275 F. App'x 925, 926 (11th Cir. 2008)[2] (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

The Court addresses each of Plaintiff's Counts in ordered succession.

#### A. Count III: Breach of Contract Implied in Fact

Plaintiff alleges Count III for a breach of contract implied in fact against the Beckett Defendants. (Doc. 51, ¶¶ 132–41). The Beckett Defendants argue that Count III should be dismissed because it is barred by the Termination Agreement. (Doc. 54, pp. 7–10).

To plead a claim for breach of contract under Florida law, a plaintiff must allege: (1) the existence of a contract; (2) a material breach of the contract; and (3) damages resulting from the breach. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citation omitted). "'A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words.'" *Rhythm & Hues, LLC v. Nature's Lawn Care, Inc.*, 368 So. 3d 12, 15 (Fla. 4th DCA 2023)

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

(quoting *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997) (en banc)). Moreover, "[a] contract implied in fact is 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Glob. Network Mgmt., LTD. v. CenturyLink Latin Am. Sols., LLC*, 67 F.4th 1312, 1318–19 (11th Cir. 2023) (quoting *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996)).

The Court first notes that "whether an implied-in-fact contract has been formed can be a fact-intensive inquiry better resolved after discovery." *See Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1261 (S.D. Fla. 2023) (citing *Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002)). For now, Plaintiff alleges sufficient facts to state a claim under Count III. (*See* Doc. 51, ¶¶ 132–41). As to the existence of a contract implied in fact, Plaintiff presents allegations to infer the Beckett Defendants' implicit promise to fund the amounts owed to Plaintiff under the Termination Agreement in exchange for Plaintiff's release of all claims against the Beckett Defendants. (*Id.* ¶¶ 135–37). Specifically, Plaintiff alleges a series of facts regarding Mr. Holbrook's conduct during negotiations and the Beckett Defendants' direct payments to Plaintiff. (*Id.* ¶¶ 68, 83, 85–86, 99, 104, 133, 139; Doc. 51-3). Next, Plaintiff alleges that the Beckett Defendants breached upon their termination of funding the amounts owed. (Doc. 51, ¶¶ 105–17, 135–38). Finally, Plaintiff alleges that he has suffered damages. (*Id.* ¶¶ 114, 116, 141). Thus, Plaintiff adequately alleges, for the

8

purposes of a motion to dismiss, the Beckett Defendants' breach of a contract implied in fact.

Moreover, the Court will not consider the Beckett Defendants' argument that "Plaintiff cannot maintain an action for breach of an 'implied in fact' contract because an express contract, for the exact same terms, already exists."[3] (Doc. 54, pp. 7–10). The Beckett Defendants present inconsistent positions regarding their relation to the Termination Agreement.[4] (*See* Doc. 54). Such inconsistency cannot support dismissal under Rule 12(b)(6). *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1326 (11th Cir. 2004) (holding that dismissal under Rule 12(b)(6) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint).

### B. Count IV: Anticipatory Repudiation of Contract Implied in Fact

In relation to Count III, Plaintiff alleges Count IV against the Beckett Defendants. (Doc. 51, ¶¶ 142–52). The Beckett Defendants do not present substantive argument to support the dismissal of Count IV. (Doc. 54, p. 10).

Pursuant to Florida law, an anticipatory breach of contract "'occurs when there is absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract. Such a repudiation may be

---

[3] The Court, will, of course, consider such an argument upon a more complete record.

[4] The Beckett Defendants, however, are permitted to maintain such inconsistent positions in their answer to the SAC. *See* FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see also* FED. R. CIV. P. 7(a).

9

evidenced by words or voluntary acts[,] but the refusal must be distinct, unequivocal, and absolute.'" *24 Hr Air Serv., Inc. v. Hosanna Cmty. Baptist Church, Inc.*, 322 So. 3d 709, 712 (Fla. 3d DCA 2021) (quoting *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. 3d DCA 1980)).

In the SAC, Plaintiff alleges that the Beckett Defendants anticipatorily repudiated their contract implied in fact by terminating the payments for the amounts owed under the Termination Agreement. (Doc. 51, ¶¶ 106–07, 110, 150–51). Plaintiff further alleges that the Beckett Defendants communicated this termination via written correspondence. (*Id.* ¶¶ 105–16; Doc. 51-4). Plaintiff thus sufficiently pleads Count IV for anticipatory repudiation of the contract implied in fact against the Beckett Defendants.

### C. Count V: Tortious Interference With a Contract

Plaintiff, in the alternative, asserts Count V against the Beckett Defendants for their alleged tortious interference with the Termination Agreement. (Doc. 51, ¶¶ 153–62). The Beckett Defendants present two arguments to support the dismissal of Count V. (Doc. 54, pp. 10–13). First, the Beckett Defendants argue that they "cannot tortiously interfere with a contract stemming from" Plaintiff and Defendant GGH's business relationship because they are parties to that business relationship. (*Id.* at p. 11). The Beckett Defendants next argue that Plaintiff does not "describe how [the] Beckett Defendants employed any improper means to induce [Defendant] GGH to breach the Termination Agreement." (*Id.* at p. 12).

Under Florida law, to state a claim for tortious interference with a contract, a plaintiff must allege: (1) "[t]he existence of a contract"; (2) "defendant's knowledge of the contract"; (3) "defendant's intentional procurement of the contract's breach"; (4) "[a]bsence of any justification or privilege"; and (5) "[d]amages resulting from the breach." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)).

Plaintiff sufficiently alleges a claim for tortious interference with contract against the Beckett Defendants. (Doc. 51, ¶¶ 153–62). Plaintiff alleges the existence of the Termination Agreement and the Beckett Defendants' knowledge thereof. (Doc. 51, ¶¶ 83, 99, 154–55; Docs. 51-2, 51-3). Plaintiff also alleges that the Beckett Defendants intentionally procured a breach of the Termination Agreement by ceasing funds for the amounts owed under the Termination Agreement. (Doc. 51, ¶ 157). Next, Plaintiff alleges an absence of justification or privilege, maintaining that the Beckett Defendants "unjustifiably interfered" with the Termination Agreement through "unlawful collusion" to "deliberately ceas[e]" funding for the amounts owed. (*Id.* ¶¶ 156–60); *see Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001) (collecting cases) ("However, when courts talk about a party's act as 'unjustified' or 'unlawful,' they essentially are talking about the same thing."). As a result of the Beckett Defendants' alleged interference, Plaintiff alleges that he has suffered ongoing damages. (Doc. 51, ¶ 161). While not the most detailed, these allegations, taken as true and read in the

11

light most favorable to Plaintiff, are sufficient to survive the Beckett Defendants' Motion.

The Beckett Defendants argue that dismissal of Count V is nonetheless warranted because "one cannot tortiously interfere with a contract stemming from a business relationship to which it is a party." (Doc. 54, p. 11). Again, the Beckett Defendants present inconsistent positions regarding their relation to the business relationship and contract at issue. (*See* Doc. 54). As such, the Court will not consider this argument for the purposes of the instant Motion. *See* discussion *supra* Section III.A.

Next, the Beckett Defendants argue that Plaintiff fails to "describe how [the] Beckett Defendants employed any improper means to induce [Defendant] GGH to breach the Termination Agreement." (Doc. 54, p. 12). As discussed above, the Court finds the pleading sufficient at this procedural stage. Moreover, as the court in *Bray & Gillespie Management LLC v. Lexington Insurance Company* noted, "[c]laims for tortious interference do not have to be pled with specificity." 527 F. Supp. 2d 1355, 1368 (M.D. Fla. 2007) (citing FED. R. CIV. P. 8(a)(2)). Consequently, the Beckett Defendants' argument as to "improper means" fails.

### D.     Counts VI and VII: The Equitable Claims

In the alternative, Plaintiff alleges equitable claims for unjust enrichment (Count VI) and quantum meruit (Count VII) against Defendant GGH and the Beckett Defendants. (Doc. 51, ¶¶ 163–77).

Under Florida law, there are four elements of an unjust enrichment claim. *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing *Com. P'ship 8098 Ltd. P'ship*, 695 So. 2d at 386). These four elements are: (1) the "plaintiff must have conferred a benefit on the defendant"; (2) "the defendant must have knowledge of the benefit"; (3) "the defendant must have accepted or retained the benefit conferred"; and (4) "the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.* (quotation marks omitted).

Similarly, to satisfy the elements of quantum meruit under Florida law, a plaintiff must show "that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *See Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999)).

### 1.     *Counts VI and VII Against Defendant GGH*

Defendant GGH moves to dismiss Counts VI and VII because the Termination Agreement exists, and thus, these counts "fail as a matter of law."

13

(Doc. 52, pp. 4–8). In response, Plaintiff contends that he can plead counts in the alternative. (Doc. 61, pp. 4–5). Plaintiff also contends that the Termination Agreement does not preclude Plaintiff's equitable claims because it does not address one of Defendant GGH's affirmative defenses. (*Id.* at pp. 6–8).

The Court agrees with Defendant GGH that the dismissal of Counts VI and VII is warranted. Under Florida law, it is well settled that a plaintiff cannot pursue an unjust enrichment claim or a quantum meruit claim where there is an express contract between the parties regarding the same subject matter. *See, e.g.*, *Glob. Network Mgmt., LTD.*, 67 F.4th at 1318 (collecting cases) ("But a court will not imply a contract in fact where there is an express agreement addressing the matter at hand"); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) ("No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract."); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (noting that Florida appellate decisions "have reinforced the position that quantum meruit damages cannot be awarded when an enforceable contract exists"); *Centr. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) (dismissing claim for unjust enrichment because there was a "valid express contract that no party challenge[d]"). Consequently, Counts VI and VII against Defendant GGH are due to be dismissed with prejudice.

Further, while Plaintiff correctly notes that Rule 8 permits alternative pleading, such equitable claims "can only be pled in the alternative if one or more

14

parties contest the existence of an express contract governing the subject of the dispute," and that is not the case here. *See, e.g., Zarrella*, 755 F. Supp. 2d at 1227; *Webster*, 124 F. Supp. 2d at 1316; *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002). Notably, Defendant GGH does not dispute the existence of the Termination Agreement between Defendant GGH and Plaintiff. (Doc. 52, p. 5).

Finally, Plaintiff's argument regarding Defendant GGH's affirmative defense is likewise unpersuasive. (Doc. 61, pp. 6–8). As discussed above, upon review of the SAC and the Termination Agreement, the Court finds that an express contract between the parties governs the dispute at issue. Whether the Termination Agreement addresses Defendant GGH's affirmative defense is not currently before the Court. Importantly, when ruling on a motion to dismiss, the Court's review is limited to the "four corners of the complaint" and the attachments thereto which are undisputed and central to the claim. *See St. George*, 285 F.3d at 1337; *Austin*, 275 F. App'x at 926.

### 2. *Counts VI and VII Against the Beckett Defendants*

The Beckett Defendants seek dismissal of Counts VI and VII because the Termination Agreement, between Plaintiff and Defendant GGH, governs the same subject matter presented in Plaintiff's equitable claims. (Doc. 54, pp. 14–15). Plaintiff, in response, argues that he may plead alternative theories of relief "where the existence and enforceability of an express contract is disputed." (Doc. 62, pp. 15–17).

15

Unlike Defendant GGH, the Beckett Defendants dispute the Termination Agreement's validity or applicability as to the Beckett Defendants. (Doc. 54, pp. 4–6); *see* discussion *supra* Section III.D.1. Consequently, the Court cannot confirm whether the Termination Agreement governs the parties' relationship at this stage in the proceedings. *See Zarrella*, 755 F. Supp. 2d at 1227. The Court thus finds that dismissal of Plaintiff's equitable claims against the Beckett Defendants is premature, and that Plaintiff may, at present, plead claims in the alternative.[5] *See Empire Corvette of Am., Inc. v. Just Toys Classic Cars, LLC*, No. 6:18-cv-26, 2018 WL 7489867, at *7 (M.D. Fla. May 1, 2018) ("Nonetheless, an unjust enrichment claim may be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid. . . . Empire alleges that no 'agreement' or contract with Just Toys exists."); *Unimerica Ins. Co. v. GA Food Servs. Inc.*, No. 8:14-cv-2419, 2014 WL 6978835, at *6 (M.D. Fla. Dec. 10, 2014) ("[Plaintiff] has engaged in 'alternative pleading,' with regard to its contract and tort-based claims. 'As the Eleventh Circuit Court of Appeals has made clear, the doctrine of election of remedies only applies after one of the remedies has been satisfied.'" (quoting *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1334

---

[5] The Court acknowledges the Beckett Defendants' citation to *Peebles v. GrassMasters Property Management, Inc.* for the proposition that a "plaintiff cannot gain equitable relief through a claim against a defendant and a nonparty to the contract concerning the same subject matter found in the express contract." 384 So. 3d 287, 289 (Fla. 3d DCA 2023). However, in *Peebles*, the court addressed a trial court's order of final judgment, and thus, review of the plaintiff's recovery in equity was appropriate. *Id.* Here, Plaintiff's ultimate recovery is not before the Court at this time. Rather, the Court merely finds that Plaintiff may plead his equitable claims in the alternative. FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

(11th Cir. 2010))). As discussed below, the Court finds that Plaintiff sufficiently states a claim for Count VI and Count VII against the Beckett Defendants.

### a.  *Count VI: Unjust Enrichment Against the Beckett Defendants*

Plaintiff, in the alternative, alleges that he conferred a benefit on the Beckett Defendants through his administrative and corporate leadership services, as well as through his release of all claims against the Beckett Defendants. (Doc. 51, ¶¶ 75–81, 164–65). Plaintiff further alleges the Beckett Defendants' knowledge of these benefits is "evidenced by various correspondences, agreements, Plaintiff's employment tenure with the various Defendants, and direct partial payments rendered by" the Beckett Defendants. (*Id.* ¶ 166). Finally, Plaintiff alleges that the circumstances would be inequitable for the Beckett Defendants to retain such benefits without fairly paying Plaintiff. (*Id.* ¶ 167). Plaintiff thus sufficiently pleads a claim for unjust enrichment in the alternative.

### b.  *Count VII: Quantum Meruit Against the Beckett Defendants*

Plaintiff also alleges, in the alternative, a claim for quantum meruit. (Doc. 51, ¶¶ 171–77). Plaintiff alleges that he provided a benefit, in the form of his administrative and corporate leadership services, to the Beckett Defendants. (*Id.* ¶ 172). Plaintiff further alleges that the Beckett Defendants assented to and received this benefit. (*Id.* ¶¶ 173–75). Plaintiff thus alleges that a reasonable person receiving such a benefit would be expected to pay for it. (*Id.* ¶¶ 175–77).

Ultimately, Plaintiff sufficiently alleges Counts VI and VII, in the alternative, against the Beckett Defendants. The dismissal of such claims is not warranted at this time.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Global Growth Holdings, LLC's Motion to Dismiss Counts VI and VII of Plaintiff's Second Amended Complaint (Doc. 52) is **GRANTED**. Counts VI and VII against Defendant GGH are **DISMISSED WITH PREJUDICE** for failure to state a claim.

2. Defendants Beckett Collectibles, LLC, Southern Hobby Distribution, LLC, and BKX Holdings, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 54) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on March 26, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties